IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 20 CR 267 |
| v. | ) | |
| | ) | |
| JEREMIAH SCOTT | ) | Judge Martha M. Pacold |
| | ) | |

**ADDENDUM TO MOTION TO DISMISS THE INDICTMENT
ON SECOND AMENDMENT GROUNDS**

Defendant Jeremiah Scott, by his attorney, Matthew J. Madden, has moved

pursuant to Rule 12(b)(1) of the Federal Rules of Criminal Procedure to dismiss the

indictment against him. Mr. Scott is charged pursuant to 18 U.S.C. §922(g)(1) with

possessing a firearm after sustaining a felony conviction. Mr. Scott's prior conviction

was for an offense—aggravated unlawful use of a weapon—which did not require

proving any element of dangerousness. Moreover, Mr. Scott's lack of dangerousness

is evinced by his release on probation.  There is no historical tradition of stripping

such non-dangerous felons of their core Second Amendment rights, as interpreted in

*Atkinson v. Garland*, No. 22-1557, 2023 WL 4071542 (7th Cir. June 20, 2023),

*Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 103 (3d Cir. 2023) (en banc),

and *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). §922(g)(1)

is therefore unconstitutional as applied to Mr. Scott and the Court should dismiss

this case with prejudice.[1]

---

[1]     "Federal Rule of Criminal Procedure 12(b)(1) permits pretrial motions raising 'any
defense' that can be adjudicated without a trial." *United States v. Stelmachowski*, No.
15 CR 339-1, 2018 WL 828078, at *6 (N.D. Ill. Feb. 12, 2018) (St. Eve, J.). Because of

**PROCEDURAL BACKGROUND**

Mr. Scott is charged pursuant to 18 U.S.C. Section 922(g)(1) with being a felon in possession of a firearm. The indictment alleges that he possessed a semiautomatic pistol, that previously travelled in interstate commerce, on May 31, 2020. Mr. Scott's has a prior conviction for aggravated unlawful use of a weapon in Cook County, IL, for which he received a sentence of two years of probation. The Illinois statute that he was convicted under does not have an element of proof that Mr. Scott used force, attempted to use force, or threatened to use force against the person or property of another.

On June 7, 2023, the Third Circuit became the first federal appellate court to hold 18 U.S.C. § 922(g)(1) unconstitutional in an as-applied challenge. *See Range*, 69 F.4th 96. The *Range* opinion interpreted the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Subsequently, on June 20, 2023, the Seventh Circuit issued its opinion in *Atkinson v. Garland*, No. 22-1557, where it held that the government's historical analysis of the constitutionality of Section 922(g)(1) fell "well short of *Bruen*'s demands." While *Atkinson* ultimately remanded the case to allow the government to attempt to develop more persuasive historical evidence, the decision also established that the government has so far failed to "affirmatively prov[e] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep

---

that, a defendant's as-applied constitutional challenge to an indictment is properly raised as a motion to dismiss under Rule 12(b)(1). *Id.*

and bear arms." *Id.* at *5 (quoting *Bruen*, 142 S. Ct. at 2127).[2] As a result of these developments, Mr. Scott moves to dismiss the indictment against him.

## ARGUMENT

### A. The Second Amendment forbids firearm regulations divorced from dangerousness.

The Second Amendment is not a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *See Bruen*, 142 S. Ct. at 2156 (citing *McDonald v. Chicago*, 561 U.S. 742, 780 (2010). Like speech, free exercise, or Confrontation, the individual right to bear arms is fundamental. Consequently, the right demands intensive scrutiny before it is limited.

The Supreme Court clearly announced what this scrutiny entails in *Bruen*. As this court has held, the approach announced in *Bruen* "anchors itself exclusively in the Second Amendment's text and the pertinent history of firearms regulation, with the government bearing the burden of "affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Atkinson v. Garland*, 70 F.4th 1018, 1019 (2023). This means that the government must—by looking primarily to Founding-era firearms regulations—demonstrate a sufficiently analogous firearm regulation or, sufficiently

---

[2] The Eighth Circuit has come to the opposite conclusion of the en banc *Range* court and found the government's historical evidence to be sufficient to support the constitutionality of Section 922(g). *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023). But while Judge Wood's dissent in *Atkinson* would have followed the Eighth Circuit's lead, the *Atkinson* majority refused to do so.

widespread practice of regulations, which would justify a modern limitation on gun rights. *See id.* at 1029.

Several judges and scholars have made clear that "[t]he historical touchstone is danger." *Folajtar v. Attorney General of the United States*, 980 F.3d 897, 912 (3d Cir. 2020) (Bibas, J., dissenting); *see also United States v. Silvers*, 671 F. Supp. 3d 755, 770 (W.D. Ky. 2023) (Beaton, J.). As then-Judge Barrett explained extensively before *Bruen*, "[h]istory is consistent with common sense: it demonstrates that legislatures have the power to prohibit dangerous people from possessing guns. But that power extends only to people who are dangerous." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barret, J., dissenting). This dangerousness principle is eminently sensible—the common concern to the American people is not "about felons in particular or even criminals in general; it is about threatened violence and the risk of public injury." *Id.* at 456; *see also Binderup v. Attorney General United States of America*, 836 F.3d 336, 368 (3d Cir. 2016) (Hardiman, J., concurring in part and concurring in the judgments).

There is substantial support for the notion that dangerousness is the lodestar Founding-era legislatures followed as opposed to the bare existence of criminal history. *See, e.g., United States v. Jackson*, 85 F.4th 468, 472 (8th Cir. 2023) (Stras, J., dissenting from denial of rehearing en banc) ("the decades surrounding the ratification of the Second Amendment showed a steady and consistent practice. People considered dangerous lost their arms. But being a criminal had little to do with it."); *Kanter*, 919 F.3d at 451 (Barret, J., dissenting); *Folajtar*, 980 F.3d at 912

(Bibas, J., dissenting) ("Most of the historical sources involved people who were dangerous.").[3]

A dangerousness-centered approach is not only sensible because it tracks risk, but also because the consequences of any other approach would be absurd. Were the legislature simply able to declare minor offenses felonies and limit firearm access, it could "quickly swallow [Second Amendment] right[s]." *Kanter*, 919 F.3d at 465 (Barrett, J., dissenting). This is not how fundamental rights work. Congress cannot declare whatever speech it wants obscenity and skirt the First Amendment—obscenity has a constitutional definition and statutes proscribing it are subject to judicial review to ensure compliance with that definition. *See Miller v. California*, 413 U.S. 15, 25 (1973). Congress similarly cannot declare certain types of hearsay reliable and skirt the Sixth Amendment. *Crawford v. Washington*, 541 U.S. 36, 67 (2004) (holding that legislative determinations of the reliability of evidence cannot supplant the Constitutional guarantee of confrontation). And to ensure Congress has not relegated the Second Amendment to a "second class right"—in direct contravention of *Bruen*—this Court must ensure that Congress has not simply declared Mr. Scott as belonging to the class of people for whom the Second Amendment may be limited.

---

[3] William Baude & Robert Leider, *The General Law Right to Bear Arms*, 99 Notre Dame L. Rev. at page 36 (forthcoming 2024), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4618350 .[3]

Unless limiting Mr. Scott's rights aligns with historical limitations on gun ownership by dangerous persons, §922(g)(1) is unconstitutional as applied to him.

### B. Historical practice does not justify stripping Scott's Second Amendment Rights

Dangerousness is the motivating factor behind historic and therefore legal firearm restrictions, and consequently this court should be focused on ascertaining whether Scott's former conviction bares indicia of dangerousness. It does not. Mr. Scott is a felon, but that does not mean he is a dangerous felon—it is the government's obligation to show that he is, or it cannot punish him for exercising his Second Amendment rights.

Felon disarmament was historically tied to the predicate felony being violent. As then-Judge Barrett explained, §922(g), which applies to *all* felons, is 'wildly overinclusive' . . . its application is not limited to those who have committed violent crimes like murder, assault, and rape," all of which require a showing of force to convict. *Kanter*, 919 F.3d at 466 (Barrett, J., dissenting) (citation omitted). And while the government urges that categorical felon disarmament is traditional, even if that were true it would have been sensible because at common law "the term 'felony' applied only to a few very serious, very dangerous offenses such as murder, rape, arson, and robbery." *Id.* at n.14. But the government's contention is not true; as Judge Bibas explained after careful historical analysis, "the colonists recognized no permanent underclass of ex-cons . . . [w]e must keep [ ] history in mind when we read

the Second Amendment. It does not exclude felons as an untouchable caste." *Folajtar*, 980 F.3d at 924 (Bibas, J., dissenting).

A categorical ban on felons exercising their Second Amendment rights is nonsensical because felon status is not dispositive of dangerousness. As the Supreme Court has explained, "a felon is not always more dangerous than a misdemeanant." *Range*, 69 F.4th at 102 (citing *Lange v. California*, 141 S. Ct. 2011, 2020 (2021)). This is crucial to keep in mind because of the historical change in what it means to be a "felony." "Felony" used signify particularly violent crimes punishable by estate forfeiture and death. *See, e.g.*, *Range*, 69 F.4th at 102; Donald B. Verrilli, Jr., *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 Colum. L. Rev. 328, 337 n.53 (1982). This is now plainly untrue—the Supreme Court has acknowledged that there are non-violent felonies that are considered "minor" crimes. *See Solem v. Helm*, 463 U.S. 277, 296–97 (1983) (the respondent's "prior offenses, although classified as felonies, were all relatively minor. All were nonviolent and none was a crime against a person."). The notion that "minor" crimes could permanently disenfranchise a citizen of their fundamental Second Amendment rights is untenable.

As a necessary consequence of this fact, the Seventh Circuit has cautioned this court "against giving too much weight to laws passed before or after the Founding." *Atkinson*, 70 F.4th at 1020. For better or for worse, the "felony" category no longer tracks dangerousness. Insofar as most felonies led to disarmament at the Founding, it was because they proscribed the unlawful use of force; to rule consistently with that

historic tradition as *Bruen* demands, this court's inquiry must be whether Scott's prior offense fits within that tradition.

Scott's prior offense did not involve proving any use of force or that Scott was a danger to his community. Scott's prior conviction was for aggravated unlawful use of a weapon under 720 Ill. Comp. Stat. Ann. 5/24-1.6. This statute requires absolutely no finding of dangerousness. In-fact, simply having an unregistered gun in one's car would be enough to trigger the statute. *See* §§5/24-1/6(a)(1), 3(C). Simply having a gun in one's car while committing a misdemeanor drug crime would also trigger the statute. *See id.* at §§ (a)(1), (3)(E). These examples are a far cry away from dangerous common-law felonies which utilize force like murder or rape.

The government has made no individualized claim that Scott is dangerous. The government makes vague gestures towards "risk" and "disregard for the law"—but nowhere in its briefing has it spelled out how Scott's prior conviction compels the conclusion that he is any more likely than any gun owner to harm the public. *See* G Response at 40. At base, its argument is simply that Scott is a felon, but this is not enough—felon status does not allow courts to "sidestep *Bruen* . . . [courts] must undertake the text-and-history inquiry the Court so plainly announced." *Atkinson*, 70 F.4th at 1022.

The impropriety of the government's approach becomes even clearer by further examining Scott's individual circumstances. Scott was released on probation for his prior offense—it defies reason that the Illinois state courts adjudged him dangerous then released him. The simplest explanation is that while Scott's prior conviction is

technically a felony, it does not fall within the historic delineation of what it meant

to be a felony (i.e., particularly violent and punishable by death). *See, e.g., Range*, 69

F.4th at 102. And if that is true, as applied to Scott §922 is unconstitutional.

It is also noteworthy that the federal felon in possession statute does not even

apply to misdemeanors that lead to less than two years of jail time. *See* 18 U.S.C.

§921(a)(20). Insofar as punishment is in any way a good proxy for dangerousness,

even under "wildly overinclusive" federal, law Scott has not been adjudged a danger.

*Cf. Kanter*, 919 F.3d at 466 (Barrett, J., dissenting).

It is plainly obvious that the government's approach cannot work for another

reason—it would constitutionalize modern Illinois law. In the government's world,

any state could simply deem something a felony and forever strip away a violator's

Second Amendment rights. This is absurd on its face—"using state laws

indiscriminately to determine the scope of the constitutional right . . . seeks

effectively to reverse incorporate state law into federal constitutional law." *See Range*,

69 F.4th at 109. Just as state evidence law cannot determine the scope of the Sixth

Amendment, state felony designations cannot determine the scope of the Second

Amendment. *Cf. Crawford v. Washington*, 541 U.S. at 40–41, 67 (rejecting the reverse

incorporation logic in the Sixth Amendment context). In this case, the government's

approach would have twenty-first century Illinois law determine the scope of his

federal constitutional rights—that is not the approach sanctioned by *Bruen*, nor is it

even remotely sensible, and the Third Circuit has rejected it. *See Range*, 69 F.4th at 109.

## CONCLUSION

Jeremiah Scott is covered by the plain text of the Second Amendment. The historical record demonstrates that dangerousness is the touchstone of historic firearm regulations, and consequently to punish Scott for the exercise of his Second Amendment rights the Government must prove his prior conviction indicates that he was dangerous. But the Government cannot—Scott's underlying offense required no showing that Scott was a danger, and the fact that he was released on probation because of the offense further indicates he was never adjudged as dangerous. Any approach that focuses solely on Scott's felon status is contrary to the Supreme Court's command in *Bruen* and the Seventh Circuit's instructions in *Atkinson*. Moreover, such an approach leads to absurd consequences—it would constitutionalize modern legislative determinations about what is and is not a felony, the determinations of which are not tied to historical analogues.

Respectfully submitted,

By:    /s/ *Matthew J. Madden*
Matthew J. Madden
Attorney for Jeremiah Scott

MATTHEW J. MADDEN
Attorney At Law, LLC
209 S. LaSalle St.
7th Floor
Chicago, IL 60604
(312) 762-9473


BENJAMIN D. LIPKIN
Law Student, University of Chicago Law School